**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Navistar, Inc. v. Testa,* **Slip Opinion No. 2015-Ohio-3283.]**

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2015-OHIO-3283

NAVISTAR, INC., APPELLANT, *v.* TESTA, TAX COMMR., APPELLEE.

**[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as** *Navistar, Inc. v. Testa,* **Slip Opinion No. 2015-Ohio-3283.]**

*Commercial-activity-tax credit—R.C. 5751.53 authorizes the tax commissioner to issue a final determination changing the amount of potential CAT credit to reflect a correction of an inaccuracy or error in the original reported amount.*

(No. 2014-0140—Submitted May 6, 2015—Decided August 18, 2015.)

APPEAL from the Board of Tax Appeals, No. 2010-575.

_____

**FRENCH, J.**

{¶ 1} Under Ohio's 2005 tax-reform legislation, the new commercial-activity tax ("CAT") was enacted "to replace the existing corporate-franchise and personal-property taxes," which were phased out under that legislation for industrial corporations like Navistar, Inc. *Beaver Excavating Co. v. Testa*, 134 Ohio St.3d 565, 2012-Ohio-5776, 983 N.E.2d 1317, ¶ 23, citing Am.Sub.H.B. No.

66, 151 Ohio Laws, Part II, 2868; R.C. 5733.01(G)(2). In this appeal, appellant, Navistar, Inc., claims that it is due a credit against the CAT.

{¶ 2} According to the testimony of employees of the Department of Taxation, the tax break at issue here, referred to simply as the "CAT credit," was intended to restore a portion of the value of a corporate asset, known as a "deferred-tax asset," the value of which would otherwise be substantially reduced by the transition from the franchise tax to the CAT. Specifically, the CAT credit would preserve part of the value of net operating losses ("NOLs") that taxpayers like Navistar had accumulated and were entitled to carry forward to later years and use as a deduction against income. But with the phase out of the franchise tax for most taxpayers (including industrial corporations like Navistar) and its replacement by the CAT, those NOLs would have lost their value under state tax law unless a special tax break was created. That tax break was the CAT credit, R.C. 5751.53.

{¶ 3} In this appeal, Navistar complains that as a result of Navistar's 2007 restatement of its 2004 financial statement, the tax commissioner erroneously reduced the amount of its potential CAT credit from over $27 million to zero. The tax commissioner based his determination on the restatement's increase in the "valuation allowance," an accounting entry that reflects the company's estimation of its future ability to realize the tax benefit of its NOLs. The 2007 restatement increased Navistar's valuation allowance from 62.4 percent to 100 percent; that increase led to a 100 percent offset of the NOLs for purposes of computing Navistar's potential CAT credit.

{¶ 4} Navistar contends that the tax commissioner had no statutory authority to adjust the amount of potential CAT credit based on accounting changes that were made after the deadline for applying for the CAT credit in June 2006. The tax commissioner, on the other hand, argues that his statutory audit

2

authority under R.C. 5751.53(D) allowed him to change the amount of potential CAT credit based on a subsequent restatement of the relevant accounting entries.

{¶ 5} In addition, the parties disagree on a legal and factual issue concerning the importance of generally accepted accounting principles ("GAAP"). Navistar argues that the CAT-credit statute took a "snapshot" of the company's books and records as of the time the credit application was filed in June 2006 and that no subsequent changes to the accounting entries can be taken into account, even if those changes are necessary to bring the company's financial reporting into compliance with GAAP. But Navistar also argues that even if GAAP compliance is required to qualify for the credit, it has proved through expert testimony that the restatement's increase in the valuation allowance to 100 percent did *not* involve a correction required by GAAP, but instead constituted a different estimation of probabilities made by different management at a different point in time. The original valuation allowance for 2004, under this view, was reasonable because it was within the range permitted under GAAP.

{¶ 6} We read R.C. 5751.53(D) as authorizing the tax commissioner to issue a final determination changing the amount of potential CAT credit, but limiting that authority to making changes that reflect a correction of an inaccuracy or error in the original reported amount. As a result, we conclude that the tax commissioner's use of Navistar's restated valuation allowance as the basis for the final determination was justified only if the restated valuation allowance was a correction of error, which in this context can be the case only if Navistar's original valuation allowance was not in compliance with GAAP.

{¶ 7} Whether Navistar's original valuation allowance was in compliance with GAAP is a question of fact that must be determined in light of evidence that militates both ways. The Board of Tax Appeals ("BTA") considered certain statements by Navistar as relevant to this point but ignored the testimony of Navistar's experts, an omission that makes the BTA's decision unreasonable and

unlawful. We therefore vacate the BTA's decision and remand the cause for a determination whether the original valuation allowance was in compliance with GAAP based upon all the evidence in the record. Disposition of this case will depend upon that determination.

### NET OPERATING LOSSES AND THE CAT CREDIT

{¶ 8} The franchise tax's net-income method used the corporation's federal "taxable income," with Ohio adjustments, as the base on which the tax was imposed. *See* R.C. 5733.04(I) and 5733.05(B). As a general matter, "[t]he taxable income of a taxpayer engaged in business or profit-oriented activities is generally net profits rather than gross receipts or gross income." 1 B. Bittker & L. Lokken, *Federal Taxation of Income, Estates, and Gifts*, ¶ 20.1.1 (3d Ed.1999). By contrast, Ohio's CAT is measured not by net income but by the gross receipts generated by income-producing activity. *See* R.C. 5751.01(F) (defining "gross receipts" as "the total amount realized by a person, without deduction for the cost of goods sold or other expenses incurred, that contributes to the production of gross income of the person, including the fair market value of any property and any services received, and any debt transferred or forgiven as consideration"); R.C. 5751.03 (imposing the tax on the "taxable gross receipts"). Compared with the franchise tax that it replaced, the CAT imposes a lower rate of taxation on a larger tax base: a tax base that consists of revenues that have not been offset by expenses.

{¶ 9} Under the franchise-tax law, which previously applied to Navistar, a corporation that experienced an NOL one year was allowed to use that loss to offset income in a different year by "carrying back" or "carrying forward" the NOL and using it as a deduction against income in a different year. *See* R.C. 5733.04(I)(1)(b).

{¶ 10} Because Ohio's franchise-tax law, along with other corporate-income-tax laws, allowed a carryforward of NOLs, accounting principles required

that the future benefit be reflected as an asset on the corporation's books and records and accompanying financial statements. When the CAT was enacted in 2005, corporations feared that the substantial Ohio portion of the NOL asset on their books would lose its value. To soften that blow, the CAT credit was devised and was included in the original CAT legislation. Navistar refers to the promulgation of R.C. 5751.53 as a "grand bargain" between Ohio franchise-tax payers and the tax department, under which the taxpayers would support the tax reform while still retaining some of the value of their Ohio deferred-tax assets such as NOLs.

{¶ 11} Under R.C. 5751.53, taxpayers were able to compute a potential amount of CAT credit. That amount consists of a portion of the Ohio-apportioned NOLs on their books at the end of their 2004 fiscal year, which, when adjusted, furnished a total amount of credit that could be used to reduce CAT liabilities over a period of up to 20 years, stretching from 2010 (the year the CAT was fully phased in and the general franchise tax phased out for taxpayers such as Navistar) through 2029. R.C. 5733.01(G)(2)(a)(vi) (phase out of franchise tax); R.C. 5751.53(B)(1) through (10).

{¶ 12} The starting point for determining the potential CAT credit was the amount of Ohio-related NOLs on the corporation's books at the end of fiscal year 2004. R.C. 5751.53(A)(5), (6), and (9). That number would be reduced by the amount of "related valuation allowance." R.C. 5751.51(A)(6)(b). "Valuation allowance" is an adjustment dictated by accounting principles that is made on the books from year to year to reflect the likelihood that the company will realize the tax benefit of the NOLs. The less likely the corporation will be able to use the NOLs, the greater the valuation allowance. The lump sum that resulted from offsetting the Ohio NOLs with the valuation allowance would be "amortized" over a period of up to 20 years beginning with calendar year 2010; the lump sum

is therefore referred to in the statute as the "amortizable amount." R.C. 5751.53(A)(9) and (B).

{¶ 13} To take the credit, a company was required to file an Amortizable Amount Report with the tax commissioner by June 30, 2006, that set forth the computation of the amortizable amount. R.C. 5751.53(D). The statute then gave the tax commissioner until June 30, 2010, to "audit the accuracy of the amortizable amount * * * and adjust the amortizable amount or, if appropriate, issue any assessment or final determination, as applicable, necessary to correct any errors found upon audit." *Id.*

### FACTUAL BACKGROUND

{¶ 14} Navistar is in the business of manufacturing commercial trucks, buses, and military vehicles under the brand names International, Navistar Defense, and IC. Navistar has long operated a manufacturing plant in Springfield, Ohio, as well as facilities in other states. Before enactment of the CAT, Navistar was a longtime franchise-tax payer in Ohio.

{¶ 15} Navistar timely filed its Amortizable Amount Report (together with its franchise-tax return for tax year 2005) on or about June 23, 2006. To qualify for the CAT credit, a taxpayer must have "qualifying Ohio net operating loss carryforward equal to or greater than the qualifying amount" of $50 million. R.C. 5751.53(A)(4) and (A)(11). It is undisputed that Navistar met that requirement.

{¶ 16} Under R.C. 5751.53(A)(9)(a), the "amortizable amount" is 8 percent of the sum of the taxpayer's "disallowed Ohio net operating loss carryforward" and other deferred tax items that are not at issue here. As relevant here, R.C. 5751.53(A)(6)(b) defines "disallowed Ohio net operating loss carryforward" as the "Ohio net operating loss carryforward amount" that Navistar "used to compute the related deferred tax asset reflected on its books and records on the last day of its taxable year ending in 2004, adjusted for return to accrual," reduced by the "qualifying related valuation allowance amount." The

6

" 'qualifying related valuation allowance amount' is the amount of Ohio net operating loss reflected in [Navistar's] computation of the valuation allowance account, as shown on its books and records on the last day of its taxable year ending in 2004." *Id.* In its June 2006 Amortizable Amount Report, Navistar computed its amortizable amount as $27,048,726.

{¶ 17} In December 2007, Navistar undertook a massive restatement of its books and financial statements as noted in its annual Form 10-K filed with the Securities and Exchange Commission ("SEC"). Among other things, the restatement increased Navistar's valuation allowance from 62.4 percent to 100 percent. The restated financials did not eliminate the NOLs or other deferred-tax assets from the company's books; instead, the restatement merely increased the valuation allowance to the point that it completely offset the value of the assets as part of the company's net worth.

{¶ 18} The tax commissioner issued his final determination in this matter on January 11, 2010. The commissioner noted his statutory authority to audit the accuracy of the amortizable amount under the CAT-credit statute, R.C. 5751.53(D). Next, the commissioner concluded that "later restated financial statements must be used, even if the correction occurred much after the period at issue." The commissioner referred to the 2007 restated financials for 2004 as a "correction" of previous error and characterized the "revised financial statements" as "the most up-to-date *and accurate* financial statements for Navistar *under generally accepted accounting principles*." (Emphasis added.) Because the "restated financial statements revised the valuation allowance to one hundred percent," the tax commissioner adjusted the amortizable amount to zero.

{¶ 19} Navistar appealed to the BTA.

**EVIDENCE PRESENTED DURING THE BTA PROCEEDINGS**

*Navistar's admissions*

{¶ 20} The tax commissioner points to certain statements that he views as admissions by Navistar, some of which were relied upon in the BTA decision. First, the transmittal letter sent with the Amortizable Amount Report and the 2005 franchise-tax return stated that Navistar was "currently undergoing a restatement examination of its financial statements for the years 2002, 2003, 2004, and 2005," that "changes [would] occur to the 2002, 2003, and 2004 financial statements as part of this examination which [would] impact" the Amortizable Amount Report and the 2005 franchise-tax return, and that Navistar "reserve[d] [its] right to file these changes" with the state "when these items become final."

{¶ 21} Second, the revised Form 10-K that Navistar filed with the SEC on December 10, 2007, pertaining to the 2005 fiscal year, specifically stated that Navistar "determined that [it] *did not apply FASB Statement No. 109 properly* and that a full valuation allowance should be established for net U.S. and Canadian deferred tax assets based on the weight of positive and negative evidence, particularly our recent history of operating losses." (Emphasis added.)

{¶ 22} Third, Form 8-K, which Navistar filed with the SEC in April 2006, identified four matters that required restatement; these matters did not involve deferred-tax assets. But the document went on to enumerate 11 "items being reviewed," and those items included deferred-tax assets.

{¶ 23} The tax commissioner also urged the BTA to consider a civil complaint filed by Navistar's parent corporation against its former accountants. *See Navistar Internatl. Corp. v. Deloitte & Touche, L.L.P.*, N.D.Ill. case No. 1:11-cv-03507. The BTA examiner accepted the complaint into evidence, but refused to consider the complaint as an admission by Navistar. In its decision, the BTA took no position on the examiner's ruling, and instead stated as follows:

> While we acknowledge the commissioner's reference to the existence of litigation between [Navistar] and the accounting firm previously involved in the audit of its financial returns, such litigation and the allegations made by [Navistar] therein need not serve as the basis upon which we decide this matter given the grant [to audit the accuracy of the amortizable amount] provided by R.C. 5751.53(D).

BTA No. 2010-575, 2013 Ohio Tax LEXIS 7601, 9, (Dec. 31, 2013), fn. 4.

*Expert testimony*

**{¶ 24}** The tax commissioner introduced testimony of accounting professor Ray Stephens. The hearing examiner accepted Stephens as an expert for purposes of the issues before the board, and the BTA reinforced that ruling by "reject[ing] as unfounded [Navistar's] argument that * * * Stephens[] be found unqualified to offer an expert opinion regarding the accounting issues involved herein." *Id.*

**{¶ 25}** Stephens expressed his opinion that the amount of Navistar's CAT credit should be zero. Stephens based his opinion on his review of Navistar's SEC filings and the civil complaint, in addition to his accounting knowledge. On cross-examination, Stephens opined that Navistar's restatement of its financials amounted to an admission that its original valuation allowance was not in compliance with GAAP. In other words, Stephens based his opinion concerning the GAAP-compliance of the initial valuation allowance on Navistar's supposed admission that it was not in compliance with GAAP.

**{¶ 26}** Navistar introduced two experts who testified to the crucial factual issue that the BTA ought to resolve in this case: whether the original valuation allowance for 2004 was in compliance with GAAP.

{¶ 27} Douglas Pinney, a certified public accountant and a specialist in income-tax accounting issues, opined that the restated valuation allowance should have no effect on the computation of the CAT credit. Pinney supported his conclusion by noting that his review of documentation indicated that the tax-adjusting entries on Navistar's books in relation to the restated financials did not occur until after the filing deadline for the Amortizable Amount Report and were not part of the 2004 books and records that the statute requires be used in computing the amortizable amount. Pinney also explained that the valuation allowance involves subjective factors with respect to projecting whether the benefit of deferred-tax assets is likely to be actually realized. For that reason, Pinney testified, there is never a single number that is the "correct" valuation allowance, but instead, there is a range of numbers that might be acceptable for a valuation allowance under GAAP. Pinney testified that the original valuation allowance, which was made part of the company's books and records in early 2005 and formed the basis for the 2006 Amortizable Amount Report, was reasonable and was in compliance with GAAP.

{¶ 28} Pinney also testified about Navistar's Form 8-K from 2006 and Form 10-K with the restated financials from 2007. On Form 10-K, Navistar stated, "[W]e did not apply FASB Statement No. 109 properly" with respect to the deferred-tax assets and valuation allowance. Asked how he reconciled that statement with his other opinions, Pinney responded that the quoted statement "doesn't necessarily mean that the valuation allowance itself was incorrect." With respect to Navistar's Form 8-K, Pinney testified that Navistar was "simply indicat[ing] they were going to review this area," i.e., the deferred-tax assets and valuation allowance.

{¶ 29} Navistar also called Beth Savage, a certified public accountant who was a consultant for troubled companies. Her testimony amplified Pinney's point that the determination of the valuation allowance involves subjective judgment in

weighing factors and predicting future events. She described the full valuation allowance in the restated financials as a "very conservative" position. Like Pinney, she testified that the credit calculation on the 2006 Amortizable Amount Report was proper because "[t]he calculation was done at a point in time[;] they used the information that was available to [them] then, and I believe that amount is supportable under generally accepted accounting principles."

*Fact testimony*

{¶ 30} Navistar called its vice president of tax, Carol Garnant, who confirmed the subjective aspect of the valuation allowance and added the historical perspective of having gone through the restatement process in her position at Navistar, testifying that neither the IRS nor any state authorities had found any fraudulent entries or accounting practices. She also testified that Navistar had in fact been able to realize the value of its NOLs.

{¶ 31} Navistar also called three Ohio Department of Taxation officials as on cross-examination to establish the historical background of the CAT credit.

### THE BTA DECISION

{¶ 32} The BTA affirmed the tax commissioner's determination. Taking as its starting point R.C. 5751.53(D)'s authorization for the commissioner to " 'correct *any errors* found upon audit,' " the BTA concluded that Navistar's Form 10-K and the transmittal letter that it sent with its Amortizable Amount Report were admissions that the 2007 restatement of the valuation allowance constitutes the correction of error in the earlier financial statements. (Emphasis added by the BTA.) 2013 Ohio Tax LEXIS 7601, 8. The BTA stated, "It is uncontested [that Navistar] undertook a comprehensive restatement of its financial statements so that they were ultimately revised in accordance with generally accepted accounting principles." *Id.* Following the tax commissioner's reasoning, the BTA treated Navistar's statements as establishing that the change in valuation allowance corrected an earlier error. Under this analysis, the restated

valuation allowance was in compliance with GAAP but the original valuation allowance was not. In reaching its conclusion, however, the BTA ignored Navistar's accounting evidence, which contradicted the idea that the original valuation allowance was not in compliance with GAAP.

## ANALYSIS

{¶ 33} Navistar presented a twofold argument to the BTA and presents the same arguments here. On the one hand, Navistar asserts that the tax commissioner lacked any authority to adjust the valuation allowance based on the restatement of financial statements that occurred after the June 2006 deadline for filing the Amortizable Amount Report. On the other hand, Navistar presented considerable evidence to the BTA to negate any inference that the 2007 restatement of the valuation allowance constituted the correction of an error in the original financial statements—thereby implicitly conceding that the tax commissioner might rely on a later financial restatement if it constituted the correction of an error in the original.

{¶ 34} We disagree with Navistar's first argument. The plain language of R.C. 5751.53(D) authorizes the tax commissioner to "adjust" the amortizable amount on account of his review of the "accuracy" of the reported amount and empowers the commissioner to "correct any errors found upon audit." The deadline for doing so was June 30, 2010, so we must conclude that the commissioner could order corrections based on information that became available to him before that date—even if the information became available only after the deadline for filing the report in June 2006. It follows that if the 2007 restatement of the valuation allowance cured an earlier inaccuracy or corrected an earlier error, it lay within the tax commissioner's authority to adopt the restated valuation allowance.

{¶ 35} We also agree with the tax commissioner that because the amortizable amount is computed by using amounts reflected in the company's

12

books and records, R.C. 5751.53(A)(9)(a) and 5751.53(A)(6)(b), and those books and records must be maintained in accordance with GAAP, R.C. 5751.53(A)(10), a correction to the books and records that brings them into compliance with GAAP is a correction that the tax commissioner should recognize when issuing his determination regarding the accuracy of the amortizable amount pursuant to R.C. 5751.53(D). That conclusion also furnishes the standard for determining whether the original valuation allowance was inaccurate or in error for purposes of applying R.C. 5751.53(D): if the original valuation allowance is established to have been within the range acceptable under GAAP, then the later restatement of the valuation allowance does not involve error correction, and the tax commissioner lacks authority to adopt the restated allowance.

{¶ 36} The BTA acknowledged the tax commissioner's statutory authority to correct error, but the BTA's decision is unreasonable and unlawful in its failure to consider and weigh all the conflicting evidence concerning whether the original valuation allowance was in compliance with GAAP. Specifically, the BTA considered the official statements made by Navistar in its SEC filings as admissions, but it failed to consider the countervailing expert and lay testimony offered by Navistar. We therefore vacate the BTA's decision and remand the cause with the instruction that the BTA carefully consider and weigh all pertinent evidence before determining whether Navistar's original valuation allowance was in compliance with GAAP.

{¶ 37} One point of dispute remains. Before the BTA and this court, the tax commissioner has sought to rely on the complaint filed in Illinois by Navistar's parent corporation against its former accountants. The hearing examiner admitted the complaint as evidence but rejected the tax commissioner's argument that it constituted admissions against interest or statements by a party opponent. The examiner also limited the tax commissioner's use of the complaint in examining witnesses.

**{¶ 38}** The BTA's decision neither explicitly nor implicitly overturned the hearing examiner's ruling; instead, the board acquiesced in the ruling by noting that it need not rely on the complaint in reaching its decision. 2013 Ohio Tax LEXIS 7601, 9, fn. 4. As a result, the hearing examiner's ruling that precluded the use of the Illinois complaint as an admission has merged into the BTA's decision and constitutes the law of this case, subject to challenge by the tax commissioner in this appeal. *See Grover v. Bartsch*, 170 Ohio App.3d 188, 2006-Ohio-6115, 866 N.E.2d 547, ¶ 9 ("Interlocutory orders * * * are merged into the final judgment," with the result that "an appeal from the final judgment includes all interlocutory orders merged with it").

**{¶ 39}** The tax commissioner has not adequately challenged the BTA's evidentiary ruling: he has neither specified it as an error in a protective notice of cross-appeal[1] nor formally contested it through a proposition of law and argument in his brief. *See Household Fin. Corp. v. Porterfield*, 24 Ohio St.2d 39, 46, 263 N.E.2d 243 (1970) (an issue "considered by the board and alluded to in both oral argument and the briefs" was nonetheless "deemed to be abandoned" when it was "not presented to this court as a proposition of law and argued as such"); *E. Liverpool v. Columbiana Cty. Budget Comm.*, 116 Ohio St.3d 1201, 2007-Ohio-5505, 876 N.E.2d 575, ¶ 3. Although the commissioner did allude to the issue in a footnote of his brief to this court, and although he reiterated the point during oral argument, his bare assertion that the Illinois complaint constitutes admissions against interest does not acknowledge the BTA examiner's contrary ruling, much less advance specific arguments in opposition to that ruling. *See Util. Serv. Partners, Inc. v. Pub. Util. Comm.*, 124 Ohio St.3d 284, 2009-Ohio-6764, 921

---

[1] In BTA appeals, it has been held necessary in some circumstances for an appellee to file a protective cross-appeal in order to advance alternative grounds for affirmance or to overturn explicit rulings of the BTA. *See, e.g., Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 33. We do not reach the question whether a protective cross-appeal was necessary here, because we hold that the tax commissioner waived the issue.

N.E.2d 1038, ¶ 53 (argument effectively waived where "[n]o argument is supplied regarding whether the relevant case law, applied to the facts of this case, justifies a decision in [the party's] favor"); *In re Application of Columbus S. Power Co.*, 129 Ohio St.3d 271, 2011-Ohio-2638, 951 N.E.2d 751, ¶ 19 ("it is not generally the proper role of this court to develop a party's arguments"). The tax commissioner has not shouldered the burden of demonstrating an abuse of discretion by the BTA's examiner. It follows that the tax commissioner has waived his right to rely on the Illinois complaint as admissions by Navistar and may not do so on remand.

### CONCLUSION

{¶ 40} For these reasons, we vacate the BTA's decision and remand the cause with the instruction that the BTA determine, based on a consideration of all the evidence in accordance with this opinion, whether the valuation allowance originally reported on Navistar's Amortizable Amount Report was or was not in compliance with GAAP. If the BTA determines that the original valuation allowance was in compliance with GAAP, the BTA shall reverse the tax commissioner's determination and reinstate the amortizable amount as originally reported. If the BTA determines that the original valuation allowance was not in compliance with GAAP, the BTA shall affirm the tax commissioner's determination.

Judgment accordingly.

O'CONNOR, C.J., and LANZINGER, KENNEDY, and O'NEILL, JJ., concur.

PFEIFER and O'DONNELL, JJ., dissent.

_____

**PFEIFER, J., dissenting.**

{¶ 41} I agree with much of the majority opinion, including its most important holding, that R.C. 5751.53(D) authorizes the tax commissioner to issue a final determination changing the amount of potential commercial-activity-tax

credit to reflect a taxpayer's correction of an inaccuracy or error in the original reported amount. I agree that the books and records used to compute the amortizable amount must be maintained in accordance with generally accepted accounting principles ("GAAP") and that when such books and records are corrected to become GAAP-compliant, the tax commissioner should recognize that correction when determining the amortizable amount pursuant to R.C. 5751.53(D).

{¶ 42} I disagree, however, with the majority's ultimate disposition of the case, vacating the decision of the Board of Tax Appeals ("BTA") and remanding the cause to the BTA. The majority concludes that the BTA did not consider the testimony of appellant Navistar, Inc.'s experts regarding whether the original valuation allowance was in compliance with GAAP, and it admonishes the BTA to, on remand, "carefully consider and weigh all pertinent evidence before determining whether Navistar's original valuation allowance was in compliance with GAAP." Majority opinion at ¶ 36.

{¶ 43} Does this court have a reason to believe that the BTA was not "careful" in making its determination the first time around? Is assessing carefulness a part of our standard of review of BTA decisions? The fact that Navistar's experts are not mentioned in the BTA's decision does not mean that the BTA failed to take into account their testimony. Obviously, the BTA placed more weight on the statements that Navistar itself made at the time it filed the amortizable amount with the Department of Taxation. The BTA quotes the statement from Navistar's assistant director of tax that Navistar was " 'currently undergoing a restatement of its financial statements for the years 2002, 2003, 2004 and 2005' " and that " '[Navistar] believe[s] that changes will occur to the 2002, 2003 and 2004 financial statements as part of this examination which will impact the return and report that we are filing today.' " BTA No. 2010-575, 2013 Ohio Tax LEXIS 7601, 9 (Dec. 31, 2013). The BTA decision also quotes from

Navistar's statement to the Securities and Exchange Commission apprising it of errors in Navistar's previously filed financial statements:

> In its Form 10-K, [Navistar] stated, in part: "In addition, in previously issued financial statements, we had established a partial valuation allowance with respect to our net U.S. and Canadian deferred tax assets. We reassessed our need for a valuation allowance and determined that *we did not apply FASB Statement No. 109 properly* and that a full valuation allowance should be established for net U.S. and Canadian deferred tax assets based on the weight of positive and negative evidence, particularly our recent history of operating losses."

(Emphasis sic.) *Id.* at fn. 5. The BTA concluded that Navistar's books were "corrected to comport with generally accepted accounting principles." *Id.* at 11. There is no reason for this court to tamper with that factual finding. This case should be over.

{¶ 44} I also disagree with the majority's ruling regarding the complaint by Navistar's parent corporation filed in federal court in Illinois against its former accountants, Deloitte & Touche, L.L.P. ("Deloitte"), alleging multiple GAAP violations in accounting services Deloitte performed for Navistar in the time period relevant to this case. *Navistar Internatl. Corp. v. Deloitte & Touche, L.L.P.*, N.D.Ill. case No. 1:11-cv-03507. One assertion in the complaint reads as follows:

> As a direct result of Deloitte's fraudulent statements and omissions, as well as Deloitte's incompetence and malpractice, Navistar was forced to fire Deloitte in 2006, hire new auditors,

overhaul its accounting records and, in 2007, issue a massive restatement of its financial statements for fiscal years 2003, 2004, and the first three quarters of 2005 * * *.

**{¶ 45}** The majority holds that "the tax commissioner has waived his right to rely on the Illinois complaint as admissions by Navistar and may not do so on remand." Majority opinion at ¶ 39. But the complaint has been admitted into evidence, and it is unclear what the BTA's position is on whether the tax commissioner can use the complaint to prove his case. It has some evidentiary value. The hearing examiner, near the end of the hearing, told the tax commissioner's counsel, "You can make any argument you want about it at this point. It is evidence in the record." The BTA itself never ruled on how the complaint could be used; it concluded only that it did not need to rely on the complaint to arrive at its decision:

While we acknowledge the commissioner's reference to the existence of litigation between [Navistar] and the accounting firm previously involved in the audit of its financial returns, such litigation and the allegations made by [Navistar] therein need not serve as the basis upon which we decide this matter given the grant provided by R.C. 5751.53(D).

2013 Ohio Tax LEXIS 7601 at 9, fn. 4. This is not a ruling that precludes the use of the complaint for any reason. How the commissioner may use the complaint remains an open question. It is the BTA, as fact-finder, that must decide what significance to accord the complaint on remand.

O'DONNELL, J., concurs in the foregoing opinion.

_____

18

Maryann B. Gall; Vorys, Sater, Seymour & Pease, L.L.P., Laura A. Kulwicki, and Steven L. Smiseck, for appellant.

Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellee.

Bricker & Eckler, L.L.P., Mark A. Engel, and Anne Marie Sferra, urging reversal for amici curiae, Ohio Manufacturers' Association and Ohio Chamber of Commerce.

_____