French, J.,
dissenting.
{¶ 36} I respectfully dissent. I agree with the majority opinion that R.C. 5751.53(D) required the tax commissioner to issue a final determination by June 30, 2010, in order to reduce the amortizable amount claimed by appellee, International Paper Company. In my view, however, the tax commissioner’s final determination was untimely.
{¶ 37} R.C. 5751.53 created a credit against the commercial-activity tax (“CAT”) in order to preserve part of the value of net operating losses (“NOLs”) that a corporate taxpayer had accumulated and was entitled to carry forward as a deduction against income under Ohio’s former corporate franchise tax. Navistar, Inc. v. Testa, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 2. To claim that credit, International Paper filed an amortizable-amount report with the tax commissioner in June 2006. R.C. 5751.53(D) then afforded the tax commissioner limited authority to audit and correct the claimed amortizable amount:
Unless extended by mutual consent, the tax commissioner may, until June 30, 2010, audit the accuracy of the amortizable amount available to each taxpayer that will claim the credit, and adjust the amortizable amount or, if appropriate, issue any assessment or final determination, as applicable, necessary to correct any errors found upon audit.
(Emphasis added.)
{¶ 38} R.C. 5703.05(L) requires the tax commissioner to maintain a journal of his final determinations that is “open to public inspection.” On June 8, 2010, the tax commissioner entered on his journal a final determination reducing International Paper’s amortizable amount from almost $17 million to $927,513. Although “open to public inspection,” the tax commissioner’s journal is not accessible through the Department of Taxation’s website, and here, the tax commissioner did not mail his final determination to International Paper until July 12, 2010. The question before this court, then, is whether the tax commissioner timely issued his final determination. If he issued that determination when he entered it on the journal, the answer is yes; if he issued it when he placed it in the mail, the answer is no. In my view, the tax commissioner issued his final determination when he mailed it on July 12, 2010, outside the statutory timeframe.
{¶ 39} The Board of Tax Appeals (“BTA”) concluded that the tax commissioner’s final determination was untimely. In doing so, it relied primarily on Carstab *360 Corp. v. Limbach, 40 Ohio St.3d 89, 532 N.E.2d 102 (1988). In Carstab, this court considered a statutory limitation on the tax commissioner’s authority to make sales- and use-tax assessments: “[N]o assessment shall be made or issued * * * more than four years after the return date for the period in which the sale or purchase was made, or more than four years after the return for such period is filed, whichever is later.” R.C. 5739.16(A). The tax commissioner in Carstab had entered her assessment on the journal and mailed it to the taxpayer within the statutory time limit, but the taxpayer received the assessment after the time limit expired.
{¶ 40} The majority dismisses the BTA’s reliance on Carstab because it contends that the only necessary determination in that case was whether the statutory phrase “made or issued” encompassed receipt by the taxpayer. But this court could not resolve Carstab without determining the “pivotal” meaning of the phrase “made or issued.” Carstab at 90.
{¶ 41} In determining the meaning of “made or issued” in Carstab, we considered the phrase in light of the tax commissioner’s general powers and duties. These include the power to make assessments authorized by law, R.C. 5703.05(H), and the duty to maintain a public journal containing a record of her actions, R.C. 5703.05(L). Recognizing that “making” and “issuing” an assessment are different events, we held that the tax commissioner “ ‘makes’ an assessment when she journalizes it because this is the act that concludes her audit activity and by which she places the assessment on the public record.” Carstab at 90. But “the commissioner ‘issues’ notice of the assessment when she ‘gives’ notice to the assessee,” which in that case meant when she deposited it in the mail. Id. Ultimately, we concluded that neither “making” nor “issuing” incorporates a requirement of receipt by the taxpayer. Id. While I agree with the majority that Carstab is not binding authority, it is persuasive as to the meaning of “issue” in R.C. 5751.53(D).
{¶ 42} The General Assembly has twice amended R.C. 5739.16—the statute at issue in Carstab—since our 1988 decision. See 1993 Am.Sub.H.B. No. 327, 145 Ohio Laws, Part III, 5409, 5415, and 2005 Am.Sub.H.B. No. 66, 151 Ohio Laws, Part II, 2868, Part III, 4612. Nevertheless, the statute continues to state that “no assessment shall be made or issued” beyond the four-year timeframe, R.C. 5739.16(A), and the General Assembly has not statutorily defined the terms “made” and “issued” in response to Carstab. We must presume that the General Assembly “ha[s] in mind prior judicial constructions” of a statute when it enacts amendments. State ex rel. Huron Cty. Bd. of Edn. v. Howard, 167 Ohio St. 93, 96, 146 N.E.2d 604 (1957).
{¶ 43} We should also assume that the General Assembly was aware of this court’s construction of the term “issue” when it enacted R.C. 5751.53—the statute *361 at issue here—17 years after Carstab. See Howard v. Seidler, 116 Ohio App.3d 800, 811, 689 N.E.2d 572 (7th Dist.1996), citing Seeley v. Expert, Inc., 26 Ohio St.2d 61, 72-73, 269 N.E.2d 121 (1971). Had the General Assembly intended that entry of a reduction on the tax commissioner’s journal satisfied the tax commissioner’s duty under R.C. 5751.53(D), without regard to whether the tax commissioner informed the taxpayer of his decision, it could have enacted statutory language to that effect. In other contexts, for example, the General Assembly has expressly tied time limits to the entry on a public journal. See, e.g., R.C. 5717.04 (providing for a 30-day appeal period from “the date of the entry of the decision of the [BTA] on the journal of its proceedings”). R.C. 5751.53(D), however, uses only the word “issue” to describe the tax commissioner’s obligation. In my view, “issue”—here, as in Carstab—relates to the mailing of the tax commissioner’s final determination, so as to give the taxpayer notice of the determination.
{¶ 44} In addition to dismissing the BTA’s reliance on Carstab, the majority concludes that R.C. 5751.53(D) is an ambiguous remedial statute that this court must liberally construe in favor of the tax commissioner. I agree that R.C. 5751.53 is a remedial statute and that we must construe remedial statutes liberally in order to promote their intended goal. R.C. 1.11; Robert V. Clapp Co. v. Fox, 124 Ohio St. 331, 334, 178 N.E. 586 (1931). But liberal construction does not always equate to a reading that benefits the tax commissioner. For example, statutes that provide for the refund of taxes illegally or erroneously paid or assessed are liberally construed in favor of the taxpayer. Phoenix Amusement Co. v. Glander, 148 Ohio St. 592, 76 N.E.2d 605 (1947), paragraph one of the syllabus.
{¶ 45} Here, as the majority opinion acknowledges, the legislative aim of the CAT credit was to “insulate taxpayers that had NOLs” under the corporate-franchise tax from losing the value of those NOLs under the new CAT. In Navistar, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, at ¶ 10, we quoted a reference to R.C. 5751.53 “as a ‘grand bargain’ between Ohio franchise-tax payers and the tax department, under which the taxpayers would support the tax reform while still retaining some of the value of their Ohio deferred-tax assets such as NOLs.” The remedy that R.C. 5751.53 provides operates in favor of the taxpayer, as should our liberal construction of the statutory language. In this case, that means the tax commissioner must mail his final determination to the taxpayer claiming the CAT credit before June 30, 2010.
{¶ 46} Because I would apply the established meaning of “issue” stated in Carstab to R.C. 5751.53(D) or would alternatively construe R.C. 5751.53(D) liberally in favor of the taxpayer, I conclude that the tax commissioner did not issue his final determination within the time prescribed by R.C. 5751.53(D). I *362 therefore respectfully dissent and would affirm the decision of the BTA, which reinstated International Paper’s claimed amortizable amount.
Zaino, Hall & Farrin, L.L.C., Thomas M. Zaino, and Richard C. Farrin, for appellee.
Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellant.
O’Donnell and Kennedy, JJ., concur in the foregoing opinion.