[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Internatl. Paper Co. v. Testa,* Slip Opinion No. 2016-Ohio-7454.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports. Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2016-OHIO-7454

INTERNATIONAL PAPER COMPANY, APPELLEE, *v.* TESTA, TAX COMMR.,
APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Internatl. Paper Co. v. Testa,* Slip Opinion No. 2016-Ohio-7454.]

*Taxation—Commercial-activities tax—R.C. 5751.53(D) requires tax commissioner to journalize, but not mail, the final determination on taxpayer's amortizable amount by June 30, 2010 deadline—Taxpayer not required to file protective cross-appeal when this court had not been asked to rule on taxpayer's substantive tax-law challenge—Decision reversed and cause remanded.*

(No. 2014-1614—Submitted July 12, 2016—Decided October 26, 2016.)

APPEAL from the Board of Tax Appeals, No. 2010-2230.

_____

**Per Curiam.**

**{¶ 1}** This case presents an issue of the credit under the commercial-activity tax ("CAT"), which permits taxpayers to realize some benefit from net operating losses ("NOLs") now that Ohio's corporate-franchise tax has been replaced by the CAT. As we explained in *Navistar, Inc. v. Testa*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, the NOLs were potential deductions under the income measure of the former corporate-franchise tax, and they were carried on the corporate books as tax-deferral assets. *Id*. at ¶ 10. When 2005 legislation phased out the corporate-franchise tax and replaced it with the CAT, the NOLs lost their value in Ohio, so the CAT/NOL credit was created to insulate taxpayers that had accumulated NOLs from the balance-sheet hit of losing them. *See id.* at ¶ 1, 11.

**{¶ 2}** The taxpayer's first step in claiming the credit is filing a report to establish the total amount of credit that might be taken over a ten- to twenty-year period. R.C. 5751.53(B) and (D). That report proposes the "amortizable amount," which is then subject to tax-commissioner review. R.C. 5751.53(A)(9) and (D). Here, appellant, the tax commissioner, in a final determination journalized on June 8, 2010, reduced to $927,513 the almost $17 million amortizable amount that appellee, International Paper Company, had reported. However, the tax commissioner's letter to International Paper memorializing this determination, dated June 8, 2010, was not mailed until July 12. International Paper opposed the reduction by appealing to the Board of Tax Appeals ("BTA"), which reinstated International Paper's amortizable amount after concluding that the tax commissioner had violated R.C. 5751.53(D) by failing to notify International Paper of its assessment by the June 30, 2010 deadline. The tax commissioner now appeals that decision.

**{¶ 3}** On this appeal, we confront only procedural issues. One was dispositive before the BTA: whether the tax commissioner must not only enter his determination on the journal, but also mail it to the taxpayer, before the June 30,

2010 deadline. The second issue is raised by the tax commissioner as a threshold to the deadline issue: whether the statutes in the first instance require the tax commissioner to issue a final determination to effect a reduction of the amortizable amount. The tax commissioner submits that even failure to comply with the deadline for issuing the final determination has no effect so long as he has actually performed and completed his audit and his adjustment of the amortizable amount by the June 30, 2010 deadline. The commissioner also argues that the deadline is merely directory rather than mandatory.

{¶ 4} Because it is a threshold issue, we consider the second issue first. We hold that R.C. 5751.53(D) does require that a reduction in the amortizable amount be embodied in a timely issued final determination and that a failure to comply with that requirement means that the taxpayer is entitled to claim the NOL credit in accordance with its originally reported amortizable amount. As a result, the amortizable amount depends upon whether a final determination adjusted that amount by the June 30 deadline.

{¶ 5} Next, we consider whether the requirement that the tax commissioner's determination be "issued" by the June 30 deadline means that the determination must be mailed as well as journalized by that date. We hold that R.C. 5751.53(D) requires that the determination be journalized by June 30, but that the determination need not be mailed by that date to be effective. As a result, the BTA erred by finding the tax commissioner's final determination void, and it should have considered International Paper's substantive challenge to the tax commissioner's determination.

{¶ 6} Before deciding to return this case to the BTA for review of the merits, however, we consider the tax commissioner's procedural question. Did International Paper jurisdictionally forfeit any right to a remand for consideration of its substantive claim because it failed to preserve that right by filing a protective cross-appeal? Our answer to this question is no. We hold that because International

Paper was not seeking review of the merits issue by this court and because the BTA had not addressed the merits issue in its previous decision, the company was not required to file a protective cross-appeal. Accordingly, we reverse the decision of the BTA, and we remand for consideration of International Paper's substantive challenge to the tax commissioner's determination.

## FACTUAL BACKGROUND

{¶ 7} International Paper timely filed its Amortizable Amount Report with the tax commissioner in 2006. The report was mailed on June 29, 2006 and received on July 3, 2006. The report computed an amortizable amount of $16,957,077. The tax commissioner conducted an audit that initially led to a reduction of that amount to zero. After consideration of new information, the tax commissioner's agents adjusted the amortizable amount to $927,513 and formulated a final determination embodying that conclusion.

{¶ 8} The parties agree that the final determination was entered on the tax commissioner's journal on June 8, 2010. It was not mailed to the taxpayer, however, until July 12. The final determination recited the reduction of the amortizable amount, and it stated that the taxpayer agreed with the reduction.

{¶ 9} International Paper appealed to the BTA, where discovery was conducted and a hearing held.

{¶ 10} The BTA issued its decision on August 19, 2014. In it, the BTA adhered to an earlier decision that the June 30, 2010 deadline stated in R.C. 5751.53(D) set a boundary for action by the commissioner, just as the June 30, 2006 date stated in the statute set a deadline for submission of the amortizable-amount report by the taxpayer. BTA No. 2010-2230, 2014 Ohio Tax LEXIS 3869, 7 (Aug. 19, 2014). The BTA invoked its own "plain reading" of the statute to find that the issuance of the final determination was subject to the June 30 deadline, and then relied on *Carstab Corp. v. Limbach*, 40 Ohio St.3d 89, 532 N.E.2d 102 (1988), for the proposition that the word "issue" in the statute refers to mailing the

4

determination, not journalizing it. *Id.* at 6-7. Based on that reasoning, the BTA remanded the matter to the commissioner with the instruction to vacate his final determination, specifying that because that final determination was never properly issued, the amortizable amount was $16,957,077. *Id.* at 9.

## ANALYSIS

### R.C. 5751.53(D) REQUIRES THE TAX COMMISSIONER TO ISSUE A FINAL DETERMINATION IN ORDER TO REDUCE THE AMORTIZABLE AMOUNT

{¶ 11} The tax commissioner contends that issuing an "assessment or final determination" reflecting an adjustment of the amortizable amount is purely optional. The relevant sentence is:

> Unless extended by mutual consent, the tax commissioner may, until June 30, 2010, audit the accuracy of the amortizable amount available to each taxpayer that will claim the credit, and adjust the amortizable amount or, if appropriate, issue any assessment or final determination, as applicable, necessary to correct any errors found upon audit.

R.C. 5751.53(D).

{¶ 12} This sentence falls short of the ideal of good draftsmanship, and one difficulty with the statute is the first appearance of the conjunction "or." The tax commissioner reads the "or" as making the issuance of an assessment or final determination completely optional; his theory is that the audit process and any taxpayer communications in relation to the audit are sufficient to reduce the potential amount of CAT credit. The practical effect of that reading would be that the taxpayer would not be able to appeal a reduced amount of potential credit until some later date when the tax commissioner disallows the amount of credit claimed. Because that date would not arrive until the taxpayer had exhausted the entire

amount of potential credit, the occurrence might come relatively late during the long ten- to twenty-year period during which the credit might be taken.

**{¶ 13}** We reject the tax commissioner's reading of the statute for several reasons. Foremost among them is that as a matter of plain language, the use of the word "necessary" in the quoted sentence strongly implies that the issuance of a final determination is required if the tax commissioner is going to reduce the amount of potential CAT credit. The necessity arises for two reasons: first, a need to definitively inform the taxpayer as to how much credit the commissioner concludes is available, and second, a need to afford the taxpayer an opportunity to contest any reduction by appealing the assessment or final determination to the BTA under R.C. 5717.02.

**{¶ 14}** We conclude that the inference that the commissioner draws from the conjunction "or" conflicts with the implication of the word "necessary" and so the statute is thereby rendered ambiguous. In determining the proper construction of the statute, we must presume that a just and "reasonable result is intended." R.C. 1.47(C). Additionally, our determination that the statute is ambiguous sets the stage for our consideration of "[t]he object sought to be attained" and "[t]he consequences of a particular construction." R.C. 1.49(A) and (E).

**{¶ 15}** In considering the "object" of the statute, along with what would constitute "a just and reasonable result," we conclude that the intent of the General Assembly was to require the tax commissioner to formalize his decision to reduce the amortizable amount, both in order to put the taxpayer on notice and to permit an immediate challenge to the reduction. Indeed, to allow the commissioner to contemplate a reduction but postpone a challenge for a decade or more contradicts an important purpose of the NOL credit, which is not only to allow the credit to be taken, but to permit the taxpayer to account for the tax asset on its books going forward.

6

**{¶ 16}** That same reasoning leads us to reject the tax commissioner's contention that "or" in R.C. 5751.53(D) severs the issuance of the final determination from the June 30, 2010 deadline. In particular, we are not persuaded by the commissioner's reliance on analysis offered by the Legislative Service Commission when the statute was passed by the General Assembly; that analysis does not clarify the statute, but instead paraphrases it and reproduces its ambiguity. We hold that in order to effectuate the legislative purpose of finalizing the amortizable amount, R.C. 5751.53(D) sets a firm time limit of June 30, 2010, and thereby avoids an indefinite delay in the issuance of the determination.

**{¶ 17}** Finally, we also reject the tax commissioner's invocation of the doctrine of longstanding administrative practice. *Compare UBS Fin. Servs., Inc. v. Levin*, 119 Ohio St.3d 286, 2008-Ohio-3821, 893 N.E.2d 811, ¶ 34 (adopting the tax commissioner's longstanding construction of a statute) *with HealthSouth Corp. v. Levin*, 121 Ohio St.3d 282, 2009-Ohio-584, 903 N.E.2d 1179, ¶ 26 ("The doctrine applies against the state when the state has interpreted the law in favor of a particular taxpayer in writing and has adhered to that interpretation over an extended period of time, but later corrects its interpretation and attempts to assess taxes retroactively in accordance with the new interpretation"), citing *NLO, Inc. v. Limbach*, 66 Ohio St.3d 389, 395, 613 N.E.2d 193 (1993), and *Ormet Corp. v. Lindley*, 69 Ohio St.2d 263, 266, 431 N.E.2d 686 (1982). Here the statute was enacted in 2005 and modified in early 2006, and the administrative practice is entirely recent and relatively limited.[1] In this context, there is no established administrative practice that would have binding effect.

---

[1] The tax commissioner also cites an information release from 2006, "CAT 2006-06," which states: "The Tax Commissioner can audit and adjust the taxpayer's amortizable amount until June 30, 2010. However, that date can be extended by agreement between the taxpayer and the Tax Commissioner. See R.C. 5751.53(B) and (D)." Contrary to the tax commissioner's suggestion, we do not read the release as addressing the issue before the court.

## THE JUNE 30, 2010 DEADLINE IS MANDATORY

{¶ 18} The tax commissioner argues, in the alternative, that the June 30 deadline is merely directory rather than mandatory, and therefore, late issuance of a final determination does not void the tax commissioner's determination.[2]

{¶ 19} In the tax area, we recently addressed the directory-versus-mandatory issue in *2200 Carnegie, L.L.C. v. Cuyahoga Cty. Bd. of Revision*, 135 Ohio St.3d 284, 2012-Ohio-5691, 986 N.E.2d 919. There, we considered whether R.C. 5715.19(B)'s 30-day time requirement for the county auditor to give notice of the filing of a complaint was jurisdictional. To make that determination, we reviewed " 'the entire act, its nature, its effect and the consequences which would result from construing it one way or another.' " *Id.* at ¶ 27, quoting *State ex rel. Jones v. Farrar*, 146 Ohio St. 467, 472, 66 N.E.2d 531 (1946). If the time limit were jurisdictional, the adverse consequence would be that an error committed by the auditor would deprive both the complainant and its opponent of the opportunity to be heard on the property's value. Such an outcome made no sense and was surely not intended by the legislature.

{¶ 20} Under *2200 Carnegie*, the core-of-procedural-efficiency test is crucial to determining the status of a requirement and a time limit as being mandatory or directory. Under the test as applied in that case, giving the notice ran

---

[2] We reject International Paper's contention that this argument was not jurisdictionally preserved in the notice of appeal to the court as required by R.C. 5717.04. Although the tax commissioner did not use the words "directory" and "mandatory" in the notice of appeal to the court, the notice does identify what the commissioner believed the BTA's error to be ("determining that the Commissioner's final determination was not 'properly issued' "), and does state how the commissioner believed the BTA should have handled this issue ("[t]he BTA should have determined that the Commissioner's final determination was properly and validly issued under R.C. 5751.53(D)"). This language satisfies the criteria in *WCI Steel, Inc. v. Testa*, 129 Ohio St.3d 256, 2011-Ohio-3280, 951 N.E.2d 421, paragraph one of the syllabus, and as in *WCI Steel*, the notice here brings within the court's jurisdiction all the relevant arguments that the tax commissioner advanced below, including the directory-versus-mandatory argument. We conclude that we have jurisdiction over that issue.

to the core of procedural efficiency, while the time for giving it did not. *Id*. at ¶ 24-26.

{¶ 21} Applying that analysis, we consider whether the issuance of the final determination of the amortizable amount by June 30, 2010, is procedurally essential. We conclude that the structure of R.C. 5751.53(D) indicates that it is. The statute contemplates a hard deadline for the taxpayer to file its report—June 30, 2006—and likewise contemplates finality in the determination of the potential CAT credit by June 30, 2010. 2010 is the year in which the credit may first be taken, and the legislative intent is that the question of potential credit be resolved "up front" through the filing and audit of the report. The statutory requirement of "mutual consent" to extend the deadline supports this conclusion, because the inference is clear that in the absence of the consent, the commissioner must comply with the deadline. Moreover, unlike in *2200 Carnegie*, if the tax commissioner fails to comply with the deadline, construing it as mandatory inflicts the adverse consequence on the state itself and on no other party.

{¶ 22} In this regard, the present case provides a stark contrast to our ruling in *Hardy v. Delaware Cty. Bd. of Revision*, 106 Ohio St.3d 359, 2005-Ohio-5319, 835 N.E.2d 348. In that case, the county auditor did not abide by a statutory deadline in declaring that certain property was no longer part of the current agricultural-use valuation program. In *Hardy*, the question was whether the first-Monday-in-August deadline set forth in former R.C. 5713.32 was supposed to limit the auditor's power to act, and we concluded that that was not the General Assembly's intent. *Id*. at ¶ 23. The overriding purpose of the time limit was to assure the opportunity of the taxpayer to challenge the action, and that right had been fully safeguarded in the case. By contrast, International Paper's right to a clear, up-front determination of the amortizable amount would be lost unless the June 30, 2010 deadline is mandatory. We hold that it is.

### "ISSUE" SHOULD BE LIBERALLY CONSTRUED IN FAVOR OF PERMITTING THE TAX COMMISSIONER TO CORRECT THE AMORTIZABLE AMOUNT

{¶ 23} We now turn to the central question resolved against the tax commissioner by the BTA: was the final determination of the amortizable amount timely "issued"? We hold that it was.

{¶ 24} Here the facts, as well as the law, deserve reiteration: the final determination reducing the potential tax credit was entered on the tax commissioner's journal on June 8, 2010. It was mailed to the taxpayer on July 12, 2010, and was received by the taxpayer on July 14, 2010. If "issuing" the determination occurred on June 8 with the entry on the journal, it was timely; if it occurred on July 12 with the mailing, it was too late.

{¶ 25} The BTA resolved this issue by citing a case from this court and a dictionary definition. The tax commissioner cites a few cases in which this court, in passing, appears to use "issue" to mean placing the final determination in the journal that the commissioner is required to maintain pursuant to R.C. 5703.05(L).

{¶ 26} We disagree with the BTA's reliance on our decision in *Carstab*, 40 Ohio St.3d 89, 532 N.E.2d 102. To be sure, International Paper correctly notes that the court did associate the "making" of a sales- and use-tax assessment with journalizing the assessment, "issuing" with mailing the assessment, and "serving" with receiving service of the entry. *Id*. at 90. Those three words were used in the version of the statute that was at issue in the case, and we stated that those were the meanings of the words in the context of that statute.

{¶ 27} But the tax commissioner's objections to relying on *Carstab* are sound. First, the statement about the meaning of "issue" is obiter dictum, because we specifically identified the "sole question presented" as being "whether an assessment is barred [by the statute of limitations] if it is not received by a taxpayer within the time limits provided" by the statutes. *Id*. at 89. The only necessary determination in *Carstab* was whether receipt by the taxpayer was a necessary

constituent of "issuing" the assessment; it was simply unnecessary to decide whether "issuance" was complete with journalization or mailing, because in *Carstab*, both events had clearly occurred within the statutory limitation period. We also find it telling in this regard that after neatly defining the three terms in *Carstab*, we disavowed the significance of our having done so by acknowledging that we were "not faced with [the] situation" of deciding between journalization or mailing. *Id*. at 90. Thus, construal of "issuing" to be the same as "mailing" in *Carstab* is dicta that is not binding here. Furthermore, R.C. 5751.53(D) is a commercial-activity-tax statute, not a sales-tax statute, and must be construed in light of its specific legislative purposes.

**{¶ 28}** The tax commissioner points to instances in which this court has used the word "issue" to refer to the journalization of a determination. Most prominently, in *Navistar*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 18, the recitation of facts asserts that the commissioner "issued his final determination in this matter on January 11, 2010." That in fact was the date of journalization of the entry, and the commissioner points to similar use of "issue" in *DeWeese v. Zaino*, 100 Ohio St.3d 324, 2003-Ohio-6502, 800 N.E.2d 1: the statute under discussion there, R.C. 5711.31, permitted taxpayers to state additional objections to the tax commissioner's amended assessment "prior to the date shown on the final determination by the commissioner," and the court characterized this as requiring the taxpayer to submit additional objections in writing "before the Tax Commissioner *issues* his final determination." (Emphasis added.) *Id*. at ¶ 10. The date shown on final determinations is the journalization date, not the mailing date.

**{¶ 29}** The significance of these cases is not to furnish binding or persuasive authority, but to establish that the term "issue" in R.C. 5751.53(D) is ambiguous with regard to the issue presented. That being so, the important canon here is that of liberal construction of remedial statutes, which has been applied to construe procedural statutes in favor of the tax assessor's ability to properly impose tax

obligations. *See Heuck v. Cincinnati Model Homes Co.,* 130 Ohio St. 378, 199 N.E. 698 (1936), paragraph one of the syllabus ("Statutory provisions which do not relate to the creation of tax obligations, but merely to the instrumentalities by which tax valuations may be determined, clerical errors rectified or omissions supplied, or to the enforcement of tax obligations, are remedial in character and should be liberally construed"); *State ex rel. Poe v. Raine*, 47 Ohio St. 447, 454, 25 N.E. 54 (1890) (statutes "giving to state and county auditors authority relating to the collection of the public revenue * * * provide the instrumentalities by which the revenue officers may enforce obligations imposed by the statutes which create the tax"; because they are "remedial," such statutes "should be liberally construed to advance the remedy"). In this context, construing R.C. 5751.53(D) liberally in favor of the tax commissioner means construing it to require him to have completed fewer, rather than more, actions by June 30, 2010. That leads us to conclude that the journalization of the final determination on June 8, 2010, sufficed to constitute "issuance" and thereby satisfied the deadline.

## INTERNATIONAL PAPER DID NOT NEED TO FILE A PROTECTIVE CROSS-APPEAL IN ORDER TO PRESERVE ITS MERITS ARGUMENT

{¶ 30} International Paper requests that if the court reverses and concludes that the tax commissioner's final determination was validly issued, the court should remand the cause to the BTA for consideration of International Paper's substantive challenge to the determination. In opposition, the tax commissioner argues that if this court reverses the BTA's ruling on the validity of the final determination, the case is over, and the reduced amortizable amount determined by the tax commissioner is in force. That is so, according to the commissioner, because International Paper did not file a protective cross-appeal preserving its substantive tax-law challenge to the reduction of the potential CAT credit amount.

{¶ 31} The tax commissioner's argument rests on a body of case law dating back to the 1970s: the early cases are *Lenart v. Lindley*, 61 Ohio St.2d 110, 115,

399 N.E.2d 1222 (1980), fn. 1, and *Rowland v. Collins*, 48 Ohio St.2d 311, 312, 358 N.E.2d 582 (1976). In both cases, the tax commissioner appealed from an adverse decision of the BTA, and on appeal the taxpayers attempted to assert alternative reasons why the BTA's rulings in their favor should be affirmed. In each case, the court stated that the alternative grounds for affirmance could not be considered because the taxpayer had not availed itself of the right to assert those issues through a notice of appeal under R.C. 5717.04, which predicates jurisdiction of the court over the appeal on a filing of the notice of appeal that specified the errors complained of in the BTA decision. Additionally, the BTA in *Rowland* had made an actual finding on the alternative ground, *id*. at 312-313, making it imperative that that finding be affirmatively challenged as error in order for relief to be granted on that point.

{¶ 32} In support of his position, the commissioner cites cases that follow *Rowland* and *Lenart*:

• *Equity Dublin Assocs. v. Testa*, 142 Ohio St.3d 152, 2014-Ohio-5243, 28 N.E.3d 1206, ¶ 23-25 (when tax commissioner and two boards of education appealed partial grant of exemption under one statutory provision, taxpayer's failure to file protective cross-appeal with respect to BTA's denial of a different statutory basis for exemption barred consideration of that claim on appeal);

• *Polaris Amphitheater Concerts, Inc. v. Delaware Cty. Bd. of Revision*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, ¶ 12-15 (board of education could not call into question the total value assigned to property in defending an appeal, when the owner/appellant had challenged only the *land* valuation and the board of education had filed no protective cross-appeal raising any issue as to the value assigned to the improvements);

• *Dayton-Montgomery Cty. Port Auth. v. Montgomery Cty. Bd. of Revision*, 113 Ohio St.3d 281, 2007-Ohio-1948, 865 N.E.2d 22, ¶ 33 (agreement of parties that a clerical error led to assignment of the wrong number as land value was not

sufficient to empower the court to effect a change in that value or to remand for change, given that the notice of appeal placed only the value of improvements at issue and not the value of the land).

**{¶ 33}** Those cases, however, are not apposite here. In each of the cases, the appellee had asked for a ruling *by the court* as to an issue on which the appellee had not prevailed below. *Accord Norandex, Inc. v. Limbach*, 69 Ohio St.3d 26, 630 N.E.2d 329 (1994), fn. 1. By contrast, International Paper seeks a remand and does not ask us to rule on the substantive tax-law issue. And in each of the cases except *Lenart*, the BTA had explicitly ruled against the appellee's position below, making it necessary that the alleged error be set forth in a notice of cross-appeal in order to invoke the court's jurisdiction consistent with R.C. 5717.04. *See also Northeast Ohio Psychiatric Inst. v. Levin*, 121 Ohio St.3d 292, 2009-Ohio-583, 903 N.E.2d 1188, ¶ 23, in which the appellee tax commissioner could not, as an alternative ground for affirmance, challenge the BTA's explicit finding that the lessee entity qualified as a charitable institution because the tax commissioner did not file a protective cross-appeal.[3]

**{¶ 34}** Thus, the cited cases are not apposite. International Paper did not have to file a cross-appeal because there was no ruling on its substantive issue from the BTA, so there is no need for us to exercise jurisdiction to decide the issue, in

---

[3] As indicated, in *Lenart,* the court has also enforced the requirement of filing a cross-appeal when an appellee might want to have the court consider an issue raised below but not addressed by the BTA in its decision. See *Lenart*, 61 Ohio St.2d at 115, 399 N.E.2d 1222, fn. 1. Not cited by the tax commissioner but additionally unavailing to him is *Christian Church of Ohio v. Limbach*, 53 Ohio St.3d 270, 271, 560 N.E.2d 199 (1990), fn. 1. In *Polaris Amphitheater Concerts*, 118 Ohio St.3d 330, 2008-Ohio-2454, 889 N.E.2d 103, ¶ 14, we cited *Christian Church* as holding that "[the court] had no jurisdiction to consider the additional claim of exemption because the owner had not filed a cross-appeal"; as discussed, International Paper does not ask the court to address its substantive issue. Moreover, despite our statement in *Polaris*, *Christian Church* really has no holding, because the appellee in that case completely abandoned the alternative exemption claim in this court, asserting it neither by a notice of cross-appeal nor in its brief. *See Couchot v. State Lottery Comm.*, 74 Ohio St.3d 417, 423-424, 659 N.E.2d 1225 (1996) (noting that a party's reliance on *Christian Church* was misplaced because "[i]n that case, the issue under discussion was abandoned by the appellee on appeal to the court").

whole or in part. Nor does International Paper seek our pronouncement on the issue in the first instance. It follows that no cross-appeal was necessary.

## CONCLUSION

{¶ 35} For the foregoing reasons, we reverse the decision of the BTA and remand with instructions that the BTA consider International Paper's substantive challenge to the tax commissioner's determination.

Decision reversed

and cause remanded.

O'CONNOR, C.J., and PFEIFER, LANZINGER, and O'NEILL, JJ., concur.

FRENCH, J., dissents, with an opinion joined by O'DONNELL and KENNEDY, JJ.

_____

**FRENCH, J., dissenting.**

{¶ 36} I respectfully dissent. I agree with the majority opinion that R.C. 5751.53(D) required the tax commissioner to issue a final determination by June 30, 2010, in order to reduce the amortizable amount claimed by appellee, International Paper Company. In my view, however, the tax commissioner's final determination was untimely.

{¶ 37} R.C. 5751.53 created a credit against the commercial-activity tax ("CAT") in order to preserve part of the value of net operating losses ("NOLs") that a corporate taxpayer had accumulated and was entitled to carry forward as a deduction against income under Ohio's former corporate franchise tax. *Navistar, Inc. v. Testa*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 2. To claim that credit, International Paper filed an amortizable-amount report with the tax commissioner in June 2006. R.C. 5751.53(D) then afforded the tax commissioner limited authority to audit and correct the claimed amortizable amount:

Unless extended by mutual consent, the tax commissioner may, until June 30, 2010, audit the accuracy of the amortizable amount available to each taxpayer that will claim the credit, and adjust the amortizable amount or, if appropriate, *issue any* assessment or *final determination*, as applicable, necessary to correct any errors found upon audit.

(Emphasis added.)

{¶ 38} R.C. 5703.05(L) requires the tax commissioner to maintain a journal of his final determinations that is "open to public inspection." On June 8, 2010, the tax commissioner entered on his journal a final determination reducing International Paper's amortizable amount from almost $17 million to $927,513. Although "open to public inspection," the tax commissioner's journal is not accessible through the Department of Taxation's website, and here the tax commissioner did not mail his final determination to International Paper until July 12, 2010. The question before this court, then, is whether the tax commissioner timely issued his final determination. If he issued that determination when he entered it on the journal, the answer is yes; if he issued it when he placed it in the mail, the answer is no. In my view, the tax commissioner issued his final determination when he mailed it on July 12, 2010, outside the statutory timeframe.

{¶ 39} The Board of Tax Appeals ("BTA") concluded that the tax commissioner's final determination was untimely. In doing so, it relied primarily on *Carstab Corp. v. Limbach*, 40 Ohio St.3d 89, 532 N.E.2d 102 (1988). In *Carstab*, this court considered a statutory limitation on the tax commissioner's authority to make sales- and use-tax assessments: "[N]o assessment shall be made or issued * * * more than four years after the return date for the period in which the sale or purchase was made, or more than four years after the return for such period is filed, whichever is later." R.C. 5739.16(A). The tax commissioner in *Carstab*

16

had entered her assessment on the journal and mailed it to the taxpayer within the statutory time limit, but the taxpayer received the assessment after the time limit expired.

{¶ 40} The majority dismisses the BTA's reliance on *Carstab* because it contends that the only necessary determination in that case was whether the statutory phrase "made or issued" encompassed receipt by the taxpayer. But this court could not resolve *Carstab* without determining the "pivotal" meaning of the phrase "made or issued." *Carstab* at 90.

{¶ 41} In determining the meaning of "made or issued" in *Carstab*, we considered the phrase in light of the tax commissioner's general powers and duties. These include the power to make assessments authorized by law, R.C. 5703.05(H), and the duty to maintain a public journal containing a record of her actions, R.C. 5703.05(L). Recognizing that "making" and "issuing" an assessment are different events, we held that the tax commissioner " 'makes' an assessment when she journalizes it because this is the act that concludes her audit activity and by which she places the assessment on the public record." *Carstab* at 90. But "the commissioner 'issues' notice of the assessment when she 'gives' notice to the assessee," which in that case meant when she deposited it in the mail. *Id*. Ultimately, we concluded that neither "making" nor "issuing" incorporates a requirement of receipt by the taxpayer. *Id.* While I agree with the majority that *Carstab* is not *binding* authority, it is persuasive as to the meaning of "issue" in R.C. 5751.53(D).

{¶ 42} The General Assembly has twice amended R.C. 5739.16—the statute at issue in *Carstab*—since our 1988 decision. *See* 1993 Am.Sub.H.B. No. 327, 145 Ohio Laws, Part III, 5409, 5415, and 2005 Am.Sub.H.B. No. 66, 151 Ohio Laws, Part II, 2868, Part III, 4612. Nevertheless, the statute continues to state that "no assessment shall be made or issued" beyond the four-year timeframe, R.C. 5739.16(A), and the General Assembly has not statutorily defined the terms "made"

and "issued" in response to *Carstab*. We must presume that the General Assembly "ha[s] in mind prior judicial constructions" of a statute when it enacts amendments. *State ex rel. Huron Cty. Bd. of Edn. v. Howard*, 167 Ohio St. 93, 96, 146 N.E.2d 604 (1957).

{¶ 43} We should also assume that the General Assembly was aware of this court's construction of the term "issue" when it enacted R.C. 5751.53—the statute at issue here—17 years after *Carstab*. *See Howard v. Seidler*, 116 Ohio App.3d 800, 811, 689 N.E.2d 572 (7th Dist.1996), citing *Seeley v. Expert, Inc.*, 26 Ohio St.2d 61, 72-73, 269 N.E.2d 121 (1971). Had the General Assembly intended that entry of a reduction on the tax commissioner's journal satisfied the tax commissioner's duty under R.C. 5751.53(D), without regard to whether the tax commissioner informed the taxpayer of his decision, it could have enacted statutory language to that effect. In other contexts, for example, the General Assembly has expressly tied time limits to the entry on a public journal. *See, e.g.,* R.C. 5717.04 (providing for a 30-day appeal period from "the date of the entry of the decision of the [BTA] on the journal of its proceedings"). R.C. 5751.53(D), however, uses only the word "issue" to describe the tax commissioner's obligation. In my view, "issue"—here, as in *Carstab*—relates to the mailing of the tax commissioner's final determination, so as to give the taxpayer notice of the determination.

{¶ 44} In addition to dismissing the BTA's reliance on *Carstab*, the majority concludes that R.C. 5751.53(D) is an ambiguous remedial statute that this court must liberally construe in favor of the tax commissioner. I agree that R.C. 5751.53 is a remedial statute and that we must construe remedial statutes liberally in order to promote their intended goal. R.C. 1.11; *Robert V. Clapp Co. v. Fox*, 124 Ohio St. 331, 334, 178 N.E. 586 (1931). But liberal construction does not always equate to a reading that benefits the tax commissioner. For example, statutes that provide for the refund of taxes illegally or erroneously paid or assessed are liberally

18

construed in favor of the *taxpayer*. *Phoenix Amusement Co. v. Glander*, 148 Ohio St. 592, 76 N.E.2d 605 (1947), paragraph one of the syllabus.

{¶ 45} Here, as the majority opinion acknowledges, the legislative aim of the CAT credit was to "insulate taxpayers that had NOLs" under the corporate-franchise tax from losing the value of those NOLs under the new CAT. In *Navistar*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, at ¶ 10, we quoted a reference to R.C. 5751.53 "as a 'grand bargain' between Ohio franchise-tax payers and the tax department, under which the taxpayers would support the tax reform while still retaining some of the value of their Ohio deferred-tax assets such as NOLs." The remedy that R.C. 5751.53 provides operates in favor of the taxpayer, as should our liberal construction of the statutory language. In this case, that means the tax commissioner must mail his final determination to the taxpayer claiming the CAT credit before June 30, 2010.

{¶ 46} Because I would apply the established meaning of "issue" stated in *Carstab* to R.C. 5751.53(D) or would alternatively construe R.C. 5751.53(D) liberally in favor of the taxpayer, I conclude that the tax commissioner did not issue his final determination within the time prescribed by R.C. 5751.53(D). I therefore respectfully dissent and would affirm the decision of the BTA, which reinstated International Paper's claimed amortizable amount.

O'DONNELL AND KENNEDY, JJ., concur in the foregoing opinion.

_____

Zaino, Hall & Farrin, L.L.C., Thomas M. Zaino, and Richard C. Farrin, for appellee.

Michael DeWine, Attorney General, and Barton A. Hubbard, Assistant Attorney General, for appellant.

_____