[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dana Corp. v. Testa,* Slip Opinion No. 2018-Ohio-1561.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2018-OHIO-1561

DANA CORPORATION, N.K.A. DANA HOLDING CORPORATION, APPELLANT AND CROSS-APPELLEE, *v*. TESTA, TAX COMMR., APPELLEE AND CROSS-APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *Dana Corp. v. Testa,* Slip Opinion No. 2018-Ohio-1561.]

*Taxation—Commercial-activity-tax credit—R.C. 5751.53(F) does not authorize an adjustment of the amortizable amount—Board of Tax Appeals' decision reversed and amortizable amount modified.*

(No. 2015-0460—Submitted December 5, 2017—Decided April 24, 2018.)

APPEAL and CROSS-APPEAL from the Board of Tax Appeals, No. 2011-2287.

_____

**Per Curiam.**

{¶ 1} In this appeal we confront an issue arising out of the special credit against the commercial-activity tax ("CAT") set forth at R.C. 5751.53 (the "CAT credit").  One factor in calculating the CAT credit is the net operating losses ("NOLs") that were incurred by the corporation before the enactment of the CAT. To take the credit, a company was required to file a report with appellee and cross-

appellant, the tax commissioner, that calculated, based on a formula set forth in R.C. 5751.53(A)(9), an amount that would be applied gradually over a period of up to 20 years ("amortizable amount") against the CAT. Appellant and cross-appellee, Dana Corporation, now known as Dana Holding Corporation, filed its report indicating that its amortizable amount was $12,493,003. Based on his audit of Dana Corporation's amortizable-amount report, the tax commissioner ordered two reductions that decreased the amortizable amount to $4,728,051. Dana agreed with the first of the two adjustments, which reduced the amortizable amount to $10,935,324, but contested the second reduction from $10,935,324 to $4,728,051. Dana argues that the second adjustment, a percentage reduction consistent with the percentage reduction of Dana's federal NOLs on account of its cancellation-of-debt income ("CODI") that resulted from its bankruptcy, was not authorized by R.C. 5751.53(F). The Board of Tax Appeals ("BTA") disagreed with Dana's position and affirmed the tax commissioner's full reduction. This issue forms the principal basis for Dana's appeal to this court. In the alternative, Dana argues that even if it was proper for the tax commissioner to reduce the amortizable amount, his calculation of the reduction was erroneous.

{¶ 2} On cross-appeal, the tax commissioner faults the BTA for rejecting his post-final-determination calculation of the amortizable amount that relies on the testimony of the tax commissioner's expert witness, who opined that the amortizable amount ought to be zero. Additionally, the tax commissioner contends that the BTA ought to have entertained his alternative theory, raised for the first time shortly before the hearing at the BTA, that Dana's NOLs were fully offset by a properly recomputed valuation allowance.

{¶ 3} We agree with Dana's main contention on appeal, and we reject the arguments advanced by the tax commissioner on cross-appeal. We therefore reverse the decision of the BTA and, pursuant to R.C. 5717.04, order modification of the amortizable amount to $10,935,324.

## I. Nature of the CAT Credit

{¶ 4} Ohio's 2005 tax reform provided for a phase out of the corporation franchise tax and a phase in of the CAT. We discussed the relationship between the two in *Navistar, Inc. v. Testa*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509.

{¶ 5} Ohio's corporation-franchise-tax law permitted a carryforward of NOLs, so that those losses could constitute a tax benefit by offsetting otherwise taxable income in later years. *See* R.C. 5733.04(I)(1)(b); *Navistar* at ¶ 9. And because the potential tax benefit of NOLs constitutes a type of corporate asset, NOLs are reflected as deferred tax assets on a corporation's books and records. *Navistar* at ¶ 10. However, because the CAT is a gross-receipts tax under which the tax rate is applied to gross revenues rather than net income, the Ohio-related NOL asset on the corporate books would lose its value as the 2005 tax reform was phased in. *Id*. at ¶ 2.

{¶ 6} To address this concern, the General Assembly included R.C. 5751.53, the CAT credit, in the CAT legislation. The statute has two main features. First, an "amortizable amount" had to be calculated and reported to the tax commissioner by the taxpayer by June 30, 2006, R.C. 5751.53(D); that amount is based on the NOL carryforwards and other deferred tax assets on the company's books as of the fiscal year ending 2004 (the last taxable year under the franchise tax before enactment of the 2005 tax reform). R.C. 5751.53(A)(5) through (9); see *Navistar* at ¶ 12. The tax commissioner was authorized to audit and modify the amortizable amount reported by the taxpayer by issuing a final determination no later than June 30, 2010 (unless the deadline was extended by consent, as it was in this case). R.C. 5751.53(D).

{¶ 7} Second, R.C. 5751.53(B) sets forth how the credit may be taken (i.e., how the "amortizable amount" is amortized) over a 10- to 20-year period to offset CAT liability. The amortizable amount is a factor in the calculation that determines

how much credit can be used each year and constitutes a cap on the total amount of credit available to the taxpayer.

## II.  Course of Proceedings

### A.  *From "old Dana" to "new Dana"*

**{¶ 8}** In this case, the tax commissioner ordered a reduction of the amortizable amount reported by Dana because of a tax-free reorganization of the corporation that was consummated on January 31, 2008.  The parties use the term "old Dana" when referring to the corporation before the reorganization and "new Dana" when referring to the corporation after the reorganization.  We adopt that terminology herein.

**{¶ 9}** Old Dana timely filed the amortizable-amount report on June 30, 2006.  Old Dana was a consolidated group of affiliated corporations, meaning that the group reported income and deductions as a single taxpayer.  The total amortizable amount reported was $12,493,003.  Around the same time that old Dana filed the report, the old Dana consolidated group went into Chapter 11 bankruptcy, during which it reorganized.  It emerged from bankruptcy on January 31, 2008, as new Dana, a consolidated group that had all the NOLs transferred from old Dana pursuant to 26 U.S.C. 381, subject to whatever reduction occurred as a result of the realization of CODI.

**{¶ 10}** Like old Dana, new Dana is a consolidated group of affiliated entities for federal income-tax purposes.  Consolidated filing "systematically affects the computation of taxable income by aggregating transactions of individual members of the consolidated group," while "eliminat[ing] the tax effect of transactions within the affiliate group."  *New York Frozen Foods, Inc. v. Bedford Hts. Income Tax Bd. of Rev.*, 150 Ohio St.3d 386, 2016-Ohio-7582, 82 N.E.3d 1105, ¶ 21, citing 26 C.F.R. 1.1502-11 through 1.1502-28.  Thus, "Dana's NOLs" refers to the aggregate NOLs of the constituent corporations.  *See* 26 CFR 1.1502-21 and 1.1502-28.

*B. The tax commissioner's audit and adjustment*

**{¶ 11}** R.C. 5751.53(D) afforded the tax commissioner until June 30, 2010, to audit and adjust the amount reported in the amortizable-amount report. In this case, the parties extended the audit period by one year to June 30, 2011, which was permitted under R.C. 5751.53(D).

**{¶ 12}** As a result of the audit, the tax commissioner reduced the amortizable amount for two separate reasons. First, the tax commissioner reduced the amortizable amount from the reported $12,493,003 to $10,935,324 based on information contained in amended tax reports filed by Dana. Dana accepted that adjustment as appropriate. Second, the tax commissioner reduced the amortizable amount from $10,935,324 to $4,728,051 based on a percentage reduction that matched the percentage reduction of Dana's federal NOLs by CODI that Dana realized as a result of the bankruptcy. Dana appealed from the tax commissioner's final determination and seeks a return to an amortizable amount of $10,935,324.[1]

### III. The BTA Decision

**{¶ 13}** The BTA began its analysis by rejecting Dana's argument that R.C. 5751.53(F) does not apply to Dana's nondivisive reorganization. The BTA stated that because division (F) constitutes the only statutory provision that permits the CAT credit to be transferred from one entity to another, it must apply to Dana's transfer of the credit from old Dana to new Dana. Next, the BTA rejected Dana's argument that although division (F) incorporated 26 U.S.C. 381 and 26 CFR 1.1502-21, which address transfer of NOLs in the context of corporate acquisitions or reorganizations, it did not incorporate 26 U.S.C. 108 and 26 CFR 1.1502-28,

---

[1] Because we agree with Dana that R.C. 5751.53(F) does not authorize a reduction of the amortizable amount, we need not discuss the relative merit of the different methods advanced in this case for calculating that reduction.

which address offsetting CODI against tax attributes, such as NOLs.[2]  The BTA concluded that "R.C. 5751.53(F) is not restrictive as to the applicability of any particular Internal Revenue Code section; any/all sections of the code shall apply, as warranted."  BTA No. 2011-2287, 2015 WL 971051, *4 (Feb. 18, 2015).

{¶ 14} Finally, the BTA rejected the tax commissioner's "revised calculation of the credit to zero dollars" as "inconsistent with and an improper application of [26 U.S.C.] 108."  *Id.*  Making no mention of Dana's proposed alternative method of computing the offset of Ohio NOLs, the BTA affirmed the tax commissioner's final determination.  Dana and the tax commissioner appealed.

## IV.  Standard of Review

{¶ 15} In reviewing decisions of the BTA, we determine whether its decision is reasonable and lawful.  *Satullo v. Wilkins*, 111 Ohio St.3d 399, 2006-Ohio-5856, 856 N.E.2d 954, ¶ 14.   Although the BTA is responsible for determining factual issues, the court " 'will not hesitate to reverse a BTA decision that is based on an incorrect legal conclusion.' "  *Id*., quoting *Gahanna-Jefferson Local School Dist. Bd. of Edn. v. Zaino*, 93 Ohio St.3d 231, 232, 754 N.E.2d 789 (2001).

## V.  The BTA Erred in Affirming the Reduction of the Amortizable Amount Based on CODI Offset of Federal NOLs

### A.  *The parties' arguments*

{¶ 16} R.C. 5751.53(F) provides:

> If one entity transfers all or a portion of its assets and equity
> to another entity as part of an entity organization or reorganization
> or subsequent entity organization or reorganization for which no

---

[2] The cited statute sections respectively address the general subjects of carryovers in corporate acquisitions and offsetting CODI against tax attributes.  The cited regulations address the manner in which the statutes operate in the context of a consolidated group.

gain or loss is recognized in whole or in part for federal income tax purposes under the Internal Revenue Code, the credits allowed by this section shall be computed in a manner consistent with that used to compute the portion, if any, of federal net operating losses allowed to the respective entities under the Internal Revenue Code. The tax commissioner may prescribe forms or rules for making the computations required by this division.

{¶ 17} The focal point of the dispute in this case is the meaning of the phrase "the portion, if any, of federal net operating losses allowed to the respective entities under the Internal Revenue Code." For his part, the tax commissioner argues that this language means that the successor entity or entities after a tax-free reorganization should be subjected to a reduction of the amortizable amount to the same extent that the NOLs are offset by CODI under the Internal Revenue Code and treasury regulations. The BTA's decision reflects its agreement with this position.

{¶ 18} On the other hand, Dana asserts that "R.C. 5751.53(F) does not authorize a recalculation of the amortizable amount in the event of an entity reorganization." Instead, it argues, the statute "requires that the credits allowed under R.C. 5751.53(B), based on the amortizable amount calculated on the basis of the 2004 books and records and the 2005 franchise tax report, be allocated to the reorganized entities in the same proportion that the federal NOLs are allocated to the respective entities." Under Dana's reading of the phrase, "the portion, if any, of federal net operating losses allowed to the respective entities under the Internal Revenue Code" would require an additional adjustment only in the context of what Dana refers to as a "divisive" reorganization: the situation in which a successor entity acquires some but not all assets (including the NOLs) of the entity that filed the amortizable-amount report. In that case, an entity would claim only a

percentage of the amortizable amount rather than claiming the amortizable amount in its entirety. Under this reading of the statute, the amortizable amount itself would not change.

    *B. The BTA's holding that under R.C. 5751.53(F) all provisions of the Internal Revenue Code are applicable is inconsequential*

**{¶ 19}** In addition to claiming that R.C. 5751.53(F) does not apply here because Dana's was not a "divisive" reorganization, Dana claims that even if it does apply, R.C. 5751.53(F) does not "incorporate" 26 U.S.C. 108 and 26 CFR 1.1502-28, which are provisions that relate to offsetting CODI against NOLs. The BTA sensibly found that "any/all sections of the [United States Code] shall apply, as warranted." 2015 WL 971051 at *4.

**{¶ 20}** Indeed, contrary to Dana's argument, the offset of CODI against NOLs is a routine computation under 26 CFR 1.1502-21. *See* 26 CFR 1.1502-21(b)(2)(iv)(B)(2)(ii) (whenever a member of a consolidated group "realizes discharge of indebtedness income that is excluded from gross income under section 108(a) and such amount reduces any portion of the consolidated NOL attributable to any member pursuant to section 108 and § 1.1502-28, the percentage of consolidated NOL attributable to each member as of immediately after the reduction of attributes pursuant to sections 108 and 1017 and § 1.1502-28 shall be recomputed pursuant to paragraph (b)(2)(iv)(B)(2)(v) of this section").

**{¶ 21}** But the question whether R.C. 5751.53(F) incorporates specific provisions of the United States Code simply begs the question whether R.C. 5751.53(F) authorizes an adjustment of the amortizable amount. Because we conclude below that R.C. 5751.53(F) does not authorize an adjustment of the amortizable amount, we conclude that the BTA's finding related to this dispute is inconsequential.

*C. R.C. 5751.53(F) does not authorize adjustment*
*of the amortizable amount*

{¶ 22} Close scrutiny of the statutory language reveals that it can plausibly be cited in support of either position. On the one hand, the tax commissioner can reasonably assert that the phrase "the portion, if any, of federal net operating losses allowed to the respective entities under the Internal Revenue Code" in R.C. 5751.53(F) refers to the reduced amount of federal NOLs resulting from the NOLs' being offset by CODI. On the other hand, the phrase could refer, as Dana contends, to nothing more than *the percentage of the amortizable amount claimed by a part successor entity,* without implying that the amortizable amount itself should be reduced. We find that division (F) neither unambiguously prescribes nor unambiguously precludes an adjustment of the amortizable amount by the tax commissioner.

{¶ 23} We therefore conclude that the parties' conflicting readings of division (F), both plausible, expose an ambiguity in the statute. *See Pittsburgh Steel Co. v. Bowers*, 173 Ohio St. 74, 77, 179 N.E.2d 915 (1962) (in addition to "the indefiniteness of the meaning of a word or phrase," ambiguity may result from a word or phrase that by itself is "perfectly clear in its meaning" but that becomes "clouded with obscurity when considered in relation to other words in a statement containing the word or phrase"). Given the ambiguity, we must interpret the statute. First, we must determine the rules of construction that apply in this case.

{¶ 24} The tax commissioner maintains that the principle that tax exemptions and reductions should be strictly construed against the claimant requires Dana to demonstrate its entitlement to the R.C. 5751.53(F) "successor/transferee" credit, which the tax commissioner claims is distinct from and more limited than the credit based on the original amortizable-amount report. The tax commissioner goes so far as to argue that implementing R.C. 5751.53(F)

involves computing a new credit for new Dana as the transferee entity and that the computation of that transferee credit is equivalent to a "grant" of a brand new credit.

**{¶ 25}** In rejecting the tax commissioner's position on this point, we do not question the basic proposition that because the CAT credit is a tax-reduction provision, Dana must show that R.C. 5751.53 " 'clearly expresses' " the tax break " 'in relation to the facts' " of its claim. *Veolia Water N. Am. Operating Servs., Inc. v. Testa*, 146 Ohio St.3d 52, 2016-Ohio-756, 51 N.E.3d 613, ¶ 19, quoting *Anderson/Maltbie Partnership v. Levin*, 127 Ohio St.3d 178, 2010-Ohio-4904, 937 N.E.2d 547, ¶ 16. Dana easily discharged that burden here: old Dana filed its amortizable-amount report consistent with R.C. 5751.53(D), and new Dana emerged from a tax-free reorganization as contemplated by R.C. 5751.53(F). That Dana is entitled to claim the CAT credit—whether the amount is $12 million, $10 million, $4 million, or $0—is neither doubted nor disputed on this record. The question here is not whether the tax break applies to Dana's circumstances but whether R.C. 5751.53(F) authorizes or requires an adjustment to the amortizable amount because of the CODI Dana realized as a result of the bankruptcy.

**{¶ 26}** Because the question here is one of credit *computation*, not credit *applicability*, we are be guided by the more general aids for construing ambiguous statutes that are generally employed when construing allocation and apportionment provisions. *See Gulf Oil Corp. v. Kosydar*, 44 Ohio St.2d 208, 216-217, 339 N.E.2d 820 (1975) (in construing the ambiguous "business-done" apportionment formula the court sought to give effect to the paramount object of the statute as a whole while avoiding unreasonable or absurd consequences); *Rio Indal, Inc. v. Lindley*, 62 Ohio St.2d 283, 285, 405 N.E.2d 291 (1980) (using general statute-construing aids to construe allocation provision). Specifically, under this case law, we must construe the computation required under R.C. 5751.53(F) in light of the " 'object sought to be attained" and the "consequences of a particular construction,"

*Internatl. Paper Co. v. Testa*, 150 Ohio St.3d 348, 2016-Ohio-7454, 81 N.E.3d 1225, ¶ 14-15, quoting R.C. 1.49(A) and (E).

{¶ 27} For five reasons, those principles militate toward adopting Dana's interpretation of R.C. 5751.53(F).

{¶ 28} First, R.C. 5751.53(B) states that "[f]or each calendar period beginning prior to January 1, 2030, there is hereby allowed a nonrefundable tax credit against the tax levied by this chapter [the CAT]." Significant is the parallelism between the phrase "there is hereby allowed a nonrefundable tax credit" in division (B) and the phrase "the credits allowed by this section shall be computed in a manner" in division (F). This parallelism implies that just as division (B) describes how the credit is "allowed" over a period of years, division (F) describes how the credit is computed over those years. Notably absent from both (B) and (F) is any direction regarding how to calculate or adjust the amortizable amount—the amortizable amount is determined exclusively under the definitional provisions of R.C. 5751.53(A) and the audit procedure set forth in R.C. 5751.53(D). Moreover, it is significant in this regard that division (F) makes no explicit reference to adjusting the amortizable amount, nor does the definition of "amortizable amount" and related terms in division (A) allude to a possible adjustment for the offset of NOLs by CODI.

{¶ 29} Second, the procedure required under R.C. 5751.53 generally militates against reading R.C. 5751.53(F) to require a reduction of the amortizable amount. As discussed, the statute requires first determining the amortizable amount and then determining year by year how much of the amortizable amount may be used as a credit in the current tax year. By construing R.C. 5751.53(F) to require adjustment of the amortizable amount, the tax commissioner potentially destroys this two-part procedural scheme.

{¶ 30} To be sure, that disruptive effect does not occur here, because the reorganization at issue came early enough to permit the tax commissioner to

perform his adjustment during the prescribed period for auditing the amortizable amount. But if the reorganization had occurred later, the tax commissioner's position implies that R.C. 5751.53(F) would require him to adjust the amortizable amount in connection with auditing the CAT returns on which the credit is claimed. Indeed, at oral argument, when asked what would happen if the reorganization occurred after the period for auditing the amortizable amount, the tax commissioner's counsel stated that the "transferee's credit" would have to be adjusted. This disregards the procedural structure of the statute by reopening the question of the amortizable amount after the period for auditing and determining that amount under R.C. 5751.53(D) has closed.

{¶ 31} This aspect of the tax commissioner's interpretation of division (F) conflicts with our holding in *Internatl. Paper Co*. In that case, we squarely rejected the theory that the amortizable amount could be adjusted outside the procedure set forth in division (D). *Internatl. Paper Co*., 150 Ohio St.3d 348, 2016-Ohio-7454, 81 N.E.3d 1225, ¶ 11-17. The intent of the legislature was to "require the tax commissioner to formalize his decision" and to fulfill the purpose of the credit to "permit the taxpayer to account for the tax asset on its books going forward." *Id*. at ¶ 15. That logic cuts against the tax commissioner's reading of R.C. 5751.53(F) here.

{¶ 32} Third, our decision in *Navistar* acknowledged that the CAT credit was intended to reflect the deferred tax assets and valuation allowance of a company as of a specific point in time, as reported on the amortizable-amount report, subject only to corrections of errors or inaccuracies. *Navistar*, 143 Ohio St.3d 460, 2015-Ohio-3283, 39 N.E.3d 509, ¶ 6, 35. Because the tax commissioner's audit authority under R.C. 5751.53(D) is limited to "making changes that reflect a correction of an inaccuracy or error in the original reported amount," *id*. at ¶ 6, any change in accounting after the filing of an amortizable-amount report that does not constitute the correction of inaccuracy or error in the

2004 books is precluded by the limitation of the tax commissioner's audit authority under division (D).

{¶ 33} This limited authority in adjusting the CAT credit militates strongly against the tax commissioner's position in this appeal. The offset of CODI against NOLs that resulted from the bankruptcy reorganization is an adjustment arising from an event that *occurred entirely after* 2004, the year that is the reference point for determining the amortizable amount, R.C. 5751.53(A)(6); *Navistar*, ¶ 11. Moreover, the offset as a matter of federal law operates as a reduction of NOLs in a purely prospective way, *see* 26 U.S.C. 108(b)(2)(A) (reduction applied to "any net operating loss carryover to such taxable year"); 26 C.F.R. 1.108-7(b) (tax attributes such as NOLs are to be taken into account for prior years "before such attributes are reduced pursuant to section 108(b)(2) and paragraph (a)(1) of this section").[3] In light of this, the offset does not involve the correction of a past inaccuracy or error that underlay the amortizable amount as reported. Therefore, interpreting division (F) to require a reduction constitutes a departure from the *Navistar* doctrine.

{¶ 34} Fourth, R.C. 5751.53(F)'s reference to computing in terms of federal NOLs rather than Ohio NOLs militates in favor of construing the provision against an adjustment of the amortizable amount. That is so because the overriding purpose of the CAT credit was, as discussed above, to soften the blow of the loss of value of *Ohio* NOLs on the corporate books. *Navistar* at ¶ 10. Ohio NOLs, as opposed to federal NOLs, relate to those losses that arose from Ohio operations that Ohio

---

[3] Dana's expert witness Richard Ward testified before the BTA that the offset of CODI against NOLs was *prospective only* under federal law, meaning that in spite of any reduction of NOL carryforwards in a later year, the NOLs carried forward from earlier years were fully available in earlier years, *in their unreduced form*, if a revenue agent ordered a retroactive increase of taxable income in an earlier year. 26 C.F.R. 1.108-7(b) supports that statement, and Ward testified that " '[cancellation-of-debt] attribute reduction should affect only the future, not the present or past.' " Quoting Henderson & Goldring, *Tax Planning for Troubled Corporations, Bankruptcy and Nonbankruptcy Restructurings,* Section 404.2, at 96 (2007).

franchise-tax law permitted to be used to offset income in a different year. Accordingly, the definition of "amortizable amount" ties the calculation of that amount to Ohio NOLs. *See* R.C. 5751.53(A)(5), (6), (9).

**{¶ 35}** Dana's proposed alternative recalculation shows that an adjustment of the amortizable amount in light of the reduction of Ohio NOLs for franchise-tax purposes would be drastically different from the federal calculation, not only because the amount of Ohio NOLs may differ in relation to Ohio-related CODI but also because Ohio's franchise tax does not prescribe a "short taxable year" for old Dana as transferor in conjunction with the bankruptcy reorganization. In opposing Dana's alternative calculation, the tax commissioner argues that division (F) incorporates federal-law provisions that are inconsistent with the franchise-tax law that Dana relies on for its calculation. But this argument points out the illogic of reading division (F) to require the adjustment at all. Had the General Assembly intended such reductions, it would have linked them to adjustments relevant for Ohio franchise-tax purposes, consistent with the overall purpose of the CAT credit.

**{¶ 36}** Finally, the disputed phrase in R.C. 5751.53(F) uses the word "portion," which means "[a] share or allotted part." *Black's Law Dictionary* 1349 (10th Ed.2014). This word choice more naturally supports Dana's interpretation, under which "portion" refers to the percentage of a fixed amortizable amount that a successor to some but not all of the NOLs might claim. By requiring that the CAT credit be allowed "in a manner consistent with that used to compute the portion, if any, of federal net operating losses allowed to the respective entities under the Internal Revenue Code," R.C. 5751.53(F) calls for apportioning the amortizable amount if there is more than one successor; it does not call for reducing the amortizable amount itself.

**{¶ 37}** For all these reasons, we conclude that R.C. 5751.53(F) does not authorize an adjustment of the amortizable amount on account of the occurrence of a tax-free reorganization. Instead, division (F) first permits the credit to transfer in

that limited context and then prescribes apportionment of the credit among successors to the extent that those successors obtain only a part, rather than all, of the NOLs of the predecessor.

{¶ 38} Our conclusion that the amortizable amount should not have been reduced on account of CODI obviates the need to address the relative merits of the various methods of computing the reduction of the amortizable amount that have been advanced. We therefore turn to that aspect of the tax commissioner's cross-appeal that calls for a recalculation of Dana's valuation allowance.

## VI. The Tax Commissioner's Argument Proposing Adjustment of the Valuation Allowance Has Been Waived

### A. *The tax commissioner is aggrieved only to a limited extent*

{¶ 39} Earlier in this appeal, we granted in part and denied in part Dana's motion to dismiss the tax commissioner's cross-appeal. We dismissed the cross-appeal to the extent that the tax commissioner was "advanc[ing] an affirmative challenge to the decision of the Board of Tax Appeals," but declined to dismiss it "to the extent that the cross-appeal is purely protective." 145 Ohio St.3d 1441, 2016-Ohio-1596, 48 N.E.3d 581. Our disposition of the motion rested on the settled doctrine that the tax commissioner is not aggrieved by a BTA decision to the extent that the decision affirms his final determination. *Newman v. Levin*, 116 Ohio St.3d 1205, 2007-Ohio-5507, 876 N.E.2d 960, ¶ 3; *Equity Dublin Assocs. v. Testa*, 142 Ohio St.3d 152, 2014-Ohio-5243, 28 N.E.3d 1206, ¶ 23.

{¶ 40} As a result of that doctrine, the tax commissioner lacks standing to seek relief that reduces the amortizable amount below the amount determined in his final determination: $4,728,051. However, his *protective* cross-appeal would permit him to advance his valuation-allowance claim to restore the reduction of Dana's amortizable amount to $4,728,051 were that proposal not barred by the doctrine of tax-commissioner waiver.

*B. The tax commissioner waived his argument proposing a valuation-allowance adjustment to the amortizable amount*

{¶ 41} Dana argues that the tax commissioner "had a full five years to audit Dana's Amortizable Amount Report, obviously had full access to Dana's publicly available Form 10-Ks, * * *, actually reviewed the valuation allowance recorded on Dana's audited financial statements for 2004, and issued a final determination and never raised any question regarding the accuracy of the valuation allowance recorded for that period until the hearing before the BTA." As a result, Dana asserts, the subject of the valuation allowance "is not relevant to the issues before the BTA."

{¶ 42} We agree with Dana on this point. We have stated that "[o]nce the tax commissioner's final determination omitted to address [an] issue as a ground for denying [an] exemption, that official incurred the burden to timely notify [the taxpayer] that it must prove the existence of a previously unaddressed element of the exemption claim." *The Chapel v. Testa*, 129 Ohio St.3d 21, 2011-Ohio-545, 950 N.E.2d 142, ¶ 27; *Kinnear Rd. Redevelopment, L.L.C. v. Testa*, 151 Ohio St.3d 540, 2017-Ohio-8816, 90 N.E.3d 926, ¶ 30, 34; *compare Krehnbrink v. Testa*, 148 Ohio St.3d 129, 2016-Ohio-3391, 69 N.E.3d 656, ¶ 26-30 (tax commissioner was not barred from making belated assertion that taxpayers were taxable as Ohio residents, because taxpayers neither contested the assertion nor argued that it had been waived). Under *The Chapel*, the tax commissioner had the minimal duty to put Dana on notice *in a timely manner* that he intended to make an issue of the valuation allowance. *Id.* at ¶ 27. This he manifestly failed to do; by his own account, the tax commissioner first formally raised the valuation-allowance issue in his "pre-[BTA-]hearing witness notification." According to the BTA's online docket, that document was filed a mere two weeks before the hearing began and more than two and a half years after the appeal was taken. And unlike the situation in *Krehnbrink*, the taxpayer in this case objected to the tax commissioner's attempt

to insert the issue belatedly into the case; those objections were largely if not completely sustained by the BTA.[4]  Accordingly, we reject the tax commissioner's argument on cross-appeal because it is barred by waiver.

### VII.  Conclusion

{¶ 43} For the foregoing reasons, we reverse the decision of the BTA and order modification of the amortizable amount to $10,935,324.

Judgment accordingly.

O'CONNOR, C.J., and O'DONNELL, and FRENCH, JJ., concur.

KENNEDY and DEWINE, JJ., concur in judgment only.

FISCHER and DEGENARO, JJ., not participating.

_____

Zaino, Hall & Farrin, L.L.C., Richard C. Farrin, Debora D. McGraw, and Thomas M. Zaino, for appellant and cross-appellee.

Michael DeWine, Attorney General, Barton A. Hubbard, Assistant Attorney General, for appellee and cross-appellant.

_____

---

[4] Because we find that a waiver has occurred under *The Chapel*, we need not address Dana's additional argument that *Key Servs. Corp. v. Zaino*, 95 Ohio St.3d 11, 764 N.E.2d 1015 (2002), on which the tax commissioner relies in this context, does not apply here, because of the special nature of the procedure for determining the amortizable amount.  We also need not address the issues regarding the allegedly proffered testimony of the tax commissioner's expert Ray Stephens.